UNITED STATES of America, Plaintiff–Appellee,

v.

LOUISVILLE EDIBLE OIL PRODUCTS, INC. also known as Louisville E.O.P., Inc.; Presidential, Inc.; Frank Reed Metts; A. Dean Huff; Raymond Carl Marrillia, Jr., also known as Sammy Marrillia, Defendants–Appellants.

No. 90–6026.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 24, 1991.

Decided March 1, 1991.

Rehearing and Rehearing En Banc Denied April 15, 1991.

Joseph M. Whittle, U.S. Atty., Richard A. Dennis, Asst. U.S. Atty., Louisville, Ky., James B. Gelin, Vicki B. Plaut (argued), U.S. Dept. of Justice, Land & Natural Resources Div., Paul S. Rosenzweig, U.S. Dept. of Justice, Environmental Crimes Section, Washington, D.C., for plaintiff-appellee.

Frank E. Haddad, Jr. (argued), Louisville, Ky., for defendants-appellants.

Before MARTIN and KRUPANSKY, Circuit Judges, and PECK, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

We have before us the denial of a motion to dismiss a nine count indictment charging asbestos related violations of the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, and the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.* Defendants claim this federal prosecution is barred by the double jeopardy clause of the fifth amendment because previous fines levied by a local environmental enforcement agency were, in effect, federal punitive measures carried out through a state agency to regulate the same conduct. Defendants also argue that prosecution under both the Clean Air Act and the Comprehensive Environmental Act violates the double jeopardy clause by subjecting them to multiple prosecution for the same conduct. Because the actions taken by the federal and state government are those of independent sovereigns, and because the Clean Air Act and the Comprehensive Environmental Act encompass separate offenses requiring differing elements of proof, we affirm the judgment of the district court that double jeopardy has not attached.

Louisville Edible Oils Products is a Kentucky corporation engaged in the business of producing edible oils such as salad oil. A federal indictment charges that Louisville Edible owned two facilities in Louisville, one at 2500 South Seventh Street and the other at 1303 South Shelby Street, from which it knowingly emitted friable asbestos, an air pollutant, and demolished or renovated a stationary asbestos source in violation of the Clean Air Act and the Comprehensive Environmental Act. These actions were allegedly carried out in whole or in part by Louisville Edible and its co-defendants: Presidential, Inc., an Indiana corporation affiliated with Louisville Edible operating as its construction and demolition unit, Frank R. Metts, former Chief Executive Officer and controlling stockholder of Louisville Edible, who died August 20, 1990, A. Dean Huff, director and President of Presidential and Special Products Manager of Louisville Edible, and Raymond Carl Marillia, Jr., director and Secretary Treasurer of Presidential and Vice President for Facilities Management of Louisville Edible. Defendants concede that each facility contained equipment insulated with asbestos which may have emitted asbestos into the air during the removal process.

The local environmental enforcement agency, the Jefferson County Air Pollution Control District, had repeatedly fined Louisville Edible for its disregard of state environmental legislation. Beginning in April of 1977, the Air Pollution Board fined Louisville Edible $25,000 for the release of asbestos from its Seventh Street facility. Louisville Edible was cited on several other occasions and was fined an additional $24,000 in July of 1988 for an illegal renovation of the asbestos containing facility at Shelby Street. Another $125,000 was assessed against Louisville Edible in July of 1989 for asbestos violations at both facilities. These fines were levied only against Louisville Edible.

In their motion to dismiss, defendants asserted that the magnitude of the Air Pollution Board fines evidenced an intent to criminally punish Louisville Edible. On this premise, defendants argued that the federal indictment based on the same conduct is barred as successive prosecution under the double jeopardy clause analysis of *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (concluding that imposition of civil fine subsequent to criminal prosecution may trigger double jeopardy protection if that fine is

punitive in nature and aimed at the same conduct); *see also Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (prohibiting multiple prosecutions by a sovereign for a single offense). Defendants also challenged the Clean Air Act and the Comprehensive Environmental Act counts, claiming they are multiple prosecutions for the same conduct under *Grady v. Corbin*, —— U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990) (Double jeopardy clause prohibits subsequent prosecution in which the government must prove as an essential element of the charged offense conduct for which the defendant has already been prosecuted).

The district court rejected these arguments and we agree. Defendants' *Halper* claim was rejected without reaching the issue of whether the fines levied against Louisville Edible constituted punishment for double jeopardy purposes because the dual sovereignty exercised by the federal government and the Air Pollution Board eliminates any double jeopardy concern. The court also found no merit to the defendants' argument that *Grady* prevented prosecution on both the Clean Air Act and the Comprehensive Environmental Act counts because it found each charge to be a separate offense requiring differing elements of proof.

■ As a preliminary issue, we must confront Presidential, Huff, and Marrillia's claim that they are somehow protected by the double jeopardy clause if we find the penalties assessed against Louisville Edible to be punitive under *Halper*. It is well established that the protection of the double jeopardy clause is "intrinsically personal." *Halper*, 109 S.Ct. at 1901. However, defendants argue that Louisville Edible's corporate structure as a Subchapter S corporation, 26 U.S.C. § 1361 *et seq.*, extends any protection from prosecution granted to Louisville Edible to them as well. As employees of a Subchapter S corporation, Huff and Marrillia are employed by Louisville Edible on a direct percentage of profits basis. Therefore, defendants argue, any penalty accessed against Louisville Edible was passed directly onto them, preclud-

ing further punishment for the same conduct.

Subchapter S is merely a taxing statute under which small closely-held corporations may avoid tax liability by treating shareholders as partners in determining that shareholder's individual tax liability based on his or her pro rata share of the corporation's items of income, loss, deduction or credit. 26 U.S.C. § 1366(a)(1)(A). Subchapter S corporations do not give their employees or shareholders any unique double jeopardy protection. Indeed, taking defendants' argument on its face would allow any individual who gains income on a pro rata basis, whether employed by a subchapter S or not, to claim double jeopardy protection when the income producer has been punished. We agree with the district court that the:

> constitutional protection against double jeopardy to which the *Halper* court referred does not extend to the defendants Presidential, ... Huff, and Marrillia.

Except for applauding the ingenuity of counsel, we reject his first argument. Thus as to all of the defendants except Louisville Edible there is no second prosecution.

The next basic issue in controversy is whether *Halper* bars the United States' prosecution of Louisville Edible because of the penalties assessed by the Jefferson County Board. *Halper* addressed the issue of whether a civil sanction following a criminal conviction for the same conduct would violate the double jeopardy clause of the fifth amendment. 109 S.Ct. at 1892. The United States charged Halper with submitting 65 false claims for Medicare reimbursement, in violation of 18 U.S.C. § 287. As a result of Halper's conduct, the government suffered a total loss of $585. He was sentenced to two years in prison and fined $5,000.

After the criminal proceedings were complete, the United States brought a civil action under the False Claims Statute, 31 U.S.C. §§ 3729–3731, which authorized a penalty of $2,000 per violation, double the damages sustained by the government, and costs. The district court found that the

subsequent civil fine imposed of over $130,-000 was so severe as to violate the double jeopardy clause as additional punishment for the same conduct for which Halper had been earlier prosecuted. On review it was stated that although civil penalties do not ordinarily rise to the level of punishment, there exists

> the possibility that in a particular case a civil penalty authorized by the Act may be so extreme and so divorced from the Government's damages and expenses as to constitute punishment.... Under the Double Jeopardy Clause, a defendant who already has been punished with criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be categorized as remedial but only as a deterrent or retribution.

*Id.* at 1898–1902.

■ Louisville Edible claims that *Halper* should apply in this case to bar prosecution of its asbestos violations because the fines imposed by the Air Pollution Board for this same conduct were so disproportionate to any remedial purpose as to constitute punishment under the double jeopardy clause. This claim is misplaced; the double jeopardy clause of the fifth amendment bars only additional prosecution by the same sovereign. *Heath v. Alabama*, 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985). Even if the fines levied by the Jefferson County Board were so severe as to be punitive under *Halper*, federal prosecution of the same conduct subsequent to that punishment would not offend the double jeopardy clause because of the dual sovereignty possessed by the state and the federal government over this matter. *See* 42 U.S.C. § 7416 (authorizing state development and enforcement of emissions standards).

■ The dual sovereignty doctrine holds that the double jeopardy clause "does not apply to suits by separate sovereigns, even if both are criminal suits for the same offense." *United States v. A Parcel of Land, Etc.*, 884 F.2d 41, 43 (1st Cir.1989). The doctrine is based on the premise that

> [w]e have here two sovereignties, deriving power from different sources, capable of dealing with the same subject matter within the same territory.... Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other.

> It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each.

*United States v. Lanza*, 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922). Here the state prosecution was directed by the Air Pollution Board, which derives its jurisdiction from state law (Ky.Rev.Stat. Ann. § 77.005 *et seq.* (Michie/Bobbs–Merrill 1980)); as a state actor the Air Pollution Board is a "separate sovereign[ ] with respect to the Federal Government because each state's power to prosecute is derived from its own 'inherent sovereignty,' not from the federal government." *Heath*, 474 U.S. at 88, 106 S.Ct. at 437 (citing *United States v. Wheeler*, 435 U.S. 313, 320, n. 14, 98 S.Ct. 1079, 1084, n. 14, 55 L.Ed.2d 303 (1978)). Accordingly, the Jefferson County Air Pollution Board and the United States, through the Environmental Protection Agency, may each pursue claims against Louisville Edible for the same conduct without subjecting the defendant to double jeopardy.

Louisville Edible argues that the dual sovereignty doctrine does not apply in this case because the Air Pollution Board and the United States Environmental Protection Agency were not acting as separate entities; but rather, that the Jefferson County Board was acting as a "tool" for federal enforcement. *See, e.g., Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) (discussing exception to dual sovereignty doctrine where state prosecution is merely a "cover and tool of federal authorities"). Louisville Edible claims that correspondence between the Chief of Air Compliance of Region IV of the Environmental Protection Agency, and the Secretary–Treasurer of the Air Pollution Control District for Jefferson County, establishes that the local agency was acting at

**588**

the direction of the Environmental Protection Agency in imposing civil fines.

We agree with the district court that a review of these documents does not suggest that the Jefferson County Air Pollution Board was acting as a conduit for federal government enforcement. Indeed, these documents establish that the Board rejected a number of the Environmental Protection Agency's recommendations, including a request to defer prosecution pending Agency action. Rather than acting as a "tool," the Board engaged in intersovereign dialogue before pursuing its own prosecution. *See Bartkus,* 359 U.S. at 123, 79 S.Ct. at 678 (discussing benefits of federal-state cooperation in law enforcement).

The Environmental Protection Agency has no statutory authority to control the actions of the local board. *See* 42 U.S.C. §§ 7401, 7412(d), 7416; Clean Air Act § 112(d); Ky.Rev.Stat.Ann. § 77.010 (Michie/Bobbs–Merrill 1980). Indeed, the record demonstrates that the Jefferson County Board often conflicted with the Environmental Protection Agency over the way to properly address Louisville Edible's actions, before the Environmental Protection Agency determined to initiate its own claim.

■ The last issue Louisville Edible raises deals solely with its double jeopardy concerns regarding the federal prosecution alone. Louisville Edible asserts that the Comprehensive Environmental Act and Clean Air Act claims are predicated on the same conduct, and thus are barred by *Grady v. Corbin,* —— U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). We disagree. We read *Grady* as barring successive prosecutions for the same offense, not simultaneous prosecutions for separate offenses. *Id.* 110 S.Ct. at 2095 (discussing states' ability to proceed against defendant in a single proceeding asserting multiple claims). We find nothing in *Grady* to alter the established principle that

> where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

*Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

We agree with the conclusion reached by the district court:

> A conviction under the Clean Air Act requires the government to prove either that defendants emitted asbestos into the atmosphere or that they violated the work practice standards adopted by the Environmental Protection Agency, Title 42 U.S.C. § 7412(e). See 40 C.F.R. § 61.140 *et seq.*
>
> To obtain a conviction under CERCLA requires the government to prove that defendants were in charge of the facility from which a hazardous substance was released and that they failed to notify immediately the appropriate agency as soon as they had knowledge of the release. Title 42 U.S.C. § 9603. (footnote omitted).
>
> It is apparent that each offense charged requires proof of an element which the other offense does not.

Accordingly, we find the indictment does not violate the double jeopardy clause by including both the Clean Air Act and the Comprehensive Environmental Act charges.

*All other claims are without merit.*

For the foregoing reasons, the judgment of the district court is affirmed.